UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
KURTIS E. ARMANN ,                     )
                                       )
      Plaintiff,                       )
                                       )
      v.                               ) Civil Action No. 03-2098 (RBW)
                                       )
DEPARTMENT OF THE ARMY, *et al*.,      )
                                       )
      Defendants.                      )
_____)

MEMORANDUM OPINION

      Plaintiff is a military prisoner serving a 35-year sentence imposed by general court-martial following a plea of guilty to attempted premeditated murder and several other charges and specifications. In this action brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), plaintiff accuses the Department of the Army and individual officials of endangering his physical and mental health by injecting experimental drugs into his body. Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). They also seek dismissal pursuant to 28 U.S.C. § 1915A on the ground that the complaint is frivolous.[1]

      Following the Court's advisements about responding to defendants' motion to dismiss, *see* Order (Jan. 31, 2005), plaintiff sought to voluntarily dismiss the complaint. He subsequently

---

[1] The Court is required to screen a prisoner's complaint "before docketing, if feasible or, in any event, as soon as practicable after docketing . . . and identify cognizable claims or dismiss the complaint, or any portion [thereof] if the complaint . . . is frivolous . . . ." 28 U.S.C. § 1915A(a)-(b).

withdrew that request and moved to enlarge the time to respond to defendants' motion. Under the circumstances presented, an enlargement of time will merely prolong the inevitable dismissal. The Court is required to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Fed. R. Civ. P. 12(h). Upon consideration of the parties' submissions and the entire record, the Court finds that it lacks subject matter jurisdiction and therefore will deny plaintiff's motion for an enlargement of time, grant defendants' Rule 12(b)(1) motion, and dismiss the case.

## I.  FACTUAL BACKGROUND

Plaintiff's plight, recounted in his 67-page amended complaint [Dkt. No. 17 (Attachment)], began in 1995 when he was based in Germany. He alleges that "a woman who later identified herself as a member of the Central Intelligence Agency . . . asked [him] to participate in a 'clinical research study . . . concern[ing] the use of []human growth hormone in sustained use over a period of 12 months." Compl. at 8 ¶¶ 31-2. He agreed to participate in the program, "which consisted of a waiver of informed consent" and involved the placement of a "small time release rod" in plaintiff's right arm. *Id*. ¶ 33. The program was "considered CLASSIFIED [and] was not to be discussed with any other person other than those predesignated by project staff." *Id*. ¶ 34. It "was 'active' about the first week of November 1995." *Id*. ¶ 35.

Between November 1995 and January 1996, plaintiff prepared for deployment to Bosnia without any known medical problems. *Id*. ¶ 36. In May 1996, plaintiff noticed physical changes to his body while on leave in the United States. When he returned to service in Hungary, he saw an Army doctor for "acne vulgaris." *Id*. ¶ 43. After being prescribed Accutane in June 1996, plaintiff alleges that as a side effect of the drug, he became hypersensitive to sunlight and

suffered sunburn. *Id*. ¶ 45.  In December 1996, plaintiff sought treatment for migraine headaches and photosensitivity.  ¶ 47.  In February 1997, plaintiff was treated for overexposure to light and a migraine headache.  ¶ 49. Thereafter, plaintiff continued to seek and receive medical treatment for a number of ailments.  *Id*.  ¶¶ 50-57.  He alleges that he was prescribed "powerful" controlled substances.  *Id*. ¶ 52.  By September 1997, plaintiff alleges that he was prescribed a number of medications and experienced adverse behavioral changes about which he warned the individuals defendants.  *Id*. ¶¶ 57-68.

At some unspecified time, plaintiff alleges that he "placed a phonecall [sic] to his 'contact' in the Central Intelligence Agency who stated that PFC B and any other person who knew about the 'agreement' was a liability, and accordingly, the Plaintiff should murder PFC B according to the 'reversion clause' of the 'contract.'" *Id*. ¶ 110.  Apparently, this alleged communication set in motion the conduct underlying plaintiff's convictions.  *See id*. ¶¶ 111, 122 ("Circumstances of the Offenses Against PFC B").

## II.  DISCUSSION

Plaintiff seeks declaratory relief and billions of dollars in monetary damages.  Military personnel cannot maintain a lawsuit for damages "where the injuries arise out of or are in the course of activity incident to service."  *Feres v. United States*, 340 U.S. 135, 146 (1950) (barring claims against the government under the Federal Tort Claims Act); *see Chappell v. Wallace*, 462 U.S. 296, 298-305 (1983) (extending *Feres* to *Bivens* claims against superior officers); *accord United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (extending *Feres* to *Bivens* claims against non-superior officers).  Plaintiff's injuries are alleged to have occurred

during his military service. The Court therefore lacks subject matter jurisdiction over the *Bivens* claim for monetary damages.

>    Plaintiff also seeks declaratory relief. Specifically, he seeks an order declaring that:

> [1] defendants acted with depraved indifference to the safety of other soldiers[] and civilian population . . . by subjecting Plaintiff to experimental combinations of drugs then forc[]ing hi[m] to work as an aviation weapons technician; [2] defendants . . . committed the act of assault consumated[sic] by battery by forcing the Plaintiff to go into the sun, knowing that such action was harmful to the Plaintiff . . . [3] defendants . . . committed acts of Extortion and Attempted to Effect the Unlawful Separatation[sic] of the Plaintiff from service by instructing the Plaintiff to violate medical orders and the law . . . [4] defendants . . . violated Plaintiff's rights by exposing [him] to other more dangerous chemicals and experimental depatterning[sic] procedures then subjecting the Plaintiff to psychological reconditioning under clandestine chemical warfare projects; and [5] defendant [CIA] . . . committed the act of attempted murder by exposing the Plaintiff to large, experimental combinations of drugs after defendant Meredith voiced intent, method, and justification to take such action to end the Plaintiff's life, then obstructed the due course of justice by concealing their illegal actions against the Plaintiff.

Compl. at 68. The Court finds no basis for exercising its discretion to entertain this claim under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See Wilton v. Seven Falls Co.*, 115 S.Ct. 2137, 2140 (1995); *Mittleman v. United States Dept. of Treasury*, 919 F. Supp. 461, 470 (D.D.C. 1995), *modified on other grounds*, 104 F.3d 410 (D.C. Cir. 1997). "Qualifying litigants are not entitled to seek relief under the Act; rather, the district court is to determine in its discretion whether the litigant's claim is appropriate for a declaratory judgment." *Mittleman*, 919 F. Supp. at 470 (citation omitted). Plaintiff's allegations are the type of "fanciful claims" found so lacking in merit as to warrant dismissal for lack of subject matter jurisdiction. *Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994). The Court therefore declines to consider plaintiff's claim for declaratory relief.

For the reasons stated, the Court grants defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).[2]

                                                      _____s/_____
                                                      Reggie B. Walton
                                                      United States District Judge

Dated: August 30, 2005

---

[2] A separate Order accompanies this Memorandum Opinion.